State, Rogers, Pros., v. Troth et al.

---

THE STATE, ROGERS, PROSECUTOR, v. TROTH AND OTHERS.

1. The 34th section of the act concerning roads, (*Nix. Dig.* 289,) prohibits the pulling down or removal of any dwelling-house by virtue of any provision in that act, and makes it unlawful to lay out a road through such dwelling-house, as the road could not be opened or used.

2. A billiard saloon attached to a hotel, always used in connection with and as a part of the hotel, for purposes appertaining to the business of the hotel, and for no other purpose, and erected for that object, is a part of the dwelling-house, within the protection of the said 34th section of the road act.

On error to the Supreme Court.

For former proceedings in this case see 5 *Vroom* 377, (*State, Pancoast, Pros.,* v. *Troth.*)

For the plaintiff in error, *M. Hutchinson* and *A. Browning.*

For the defendants, *G. S. Cannon* and *James Wilson.*

The opinion of the court was delivered by

THE CHANCELLOR. The *certiorari* from the Supreme Court brought before it the proceedings of the Court of Common Pleas of the county of Burlington, in appointing survey-ors to lay out a road in the city of Bordentown, and the pro-ceedings of the surveyors in laying out the road. That court affirmed the proceedings of both.

One of the reasons for reversal was, that the Court of Common Pleas had no jurisdiction as to laying out roads in the city of Bordentown. On this point, this court was unani-mously of opinion, after hearing both counsel for the plaintiff in error, that the judgment of the Supreme Court was right; another reason was, that the surveyors had no right to assess the expenses on the whole township of Bordentown, but should have confined the assessment to the city. On this point, after hearing the opening counsel for the plaintiff, the court, one member dissenting, was also of opinion that the judgment of the Supreme Court was right, and did not hear the counsel for the defendant on either of these points.

Another reason for reversal was, that the road was laid out through a dwelling-house of the prosecutor. The Supreme Court determined that the building was not a dwelling-house. The building, part of which was included in the road, was one used as a billiard saloon, adjoining and connected with a stone dwelling-house of the prosecutor, occupied as a tavern. This saloon was occupied by the tenant of the tavern as part of the tavern stand, and was used for the purposes of the tavern, principally as a billiard room, having two tables, but sometimes for public meetings, for justices' trials, and for an oyster stand; it was capable of being used for lodgers, if the main house should be full. It was connected with the bar-room directly by a door between them, and also by an oyster saloon connected with each by a door. It was built of wood, against the main building, which was of stone. It was built long after the main building, and in parcels at different times. It was built by the tenant with consent of the owner, upon an agreement by which the tenant could remove it. The

main house had a cellar, the saloon had none, but it was built over the outside cellar steps of the house, and had access to the cellar by a door in the floor over these steps.  The rafters of the saloon were let into and fastened to the walls of the main house, by cutting out part of the wall for the purpose. The sides of the saloon merely butted against the wall of the house without any fastening.  The stone wall of the house inside of the saloon was not changed or covered, except by a coat of whitewash.  Before the road was laid out, the tenant sold the saloon to his landlord, who owned it at the laying out.

The hotel was a dwelling-house—the only question is whether the saloon was a part of the hotel; this must be determined by its use and the manner in which it is connected with it.  That it was built by a tenant under an agreement for removal, and in such manner that it could be removed without serious injury to the house, cannot affect the question. An entire dwelling-house might have been thus built.  When the landlord bought the saloon, its relation to the house was the same as if it had been erected by him.

We are of opinion that this saloon was part of the dwelling-house, both from its connection and from its use.  It was supported upon and connected with the ground by the foundation, of whatever constructed.  Its rafters were let into the solid wall of the house and fastened there.  It was such a building as could not be removed, except by special agreement.  For use in connection with the hotel, it communicated with it by two doors and a cellar door.

It was always used in connection with, and as a part of the hotel, for purposes appertaining to the business of the hotel, and for no other purpose, and such was the object of its erection.  The billiard room of a private citizen, used by himself and his family, is part of his dwelling-house, whether inside of the main house or annexed as a wing; it is as much so as the dining room or library.  Each of these is frequently built as a wing or extension of the main house.  The Supreme

Court, in our opinion, erred in holding that this saloon was not part of the dwelling house.

The 34th section of the road act prohibits the pulling down or removing a dwelling-house by virtue of any provision in that act, and this clearly makes it unlawful to lay out a road through it, as the road could not be opened or used.

The judgment of the Supreme Court must be reversed, and the proceedings of the Court of Common Pleas and of the surveyors set aside.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SCUD-DER, CLEMENT, KENNEDY, LATHROP, OGDEN, WALES. 8.

*For affirmance*—None.